NicholsoN, C. J.,
delivered the opinion of the Court.
The original proceedings in this cause, in the County Court of Lincoln, resulted in a decree for the sale of a tract of land, of which Stephen Touchstone died seized. The objects of the sale were the payment of debts, and distribution of the residue among his distributees. D. J. Whittington was appointed as Clerk and Special Commissioner to sell the land. The sale was made on the. 1st of February, 1862, when W. C. Sugg was the purchaser, who paid in cash $509, and executed his three notes for $1,528, payable at one, two and three years, with sureties. The notes were payable to D. J. Whit-tington, Clerk and Special Commissioner.
After the notes had all been paid and taken up by Sugg, the purchaser, a motion was made in the County Court for judgment against Sugg and his securities, for the amount of the first note, upon the ground that the note was paid off by Sugg in Confederate money. On this motion, judgment was rendered against Sugg and his sureties in the County Court, from Avhich they appealed to the Supreme Court. At the December Term, 1866, the Supreme Court reversed the judgment, and dis *515 charged Sugg and his sureties from liability. In the decree the Court say: <vThe proof shows that the Clerk, as Special Commissioner, received payment of this note, though a part of the amount paid was Confederate Treasury notes. It was received voluntarily, and without coercion. The Commissioner had the right to receive payment, and it falls within the principles of executed contracts; and the Clerk and Commissioner having received it in payment, he is liable for the amount, all other questions being reserved. The judgment against Sugg and his securities is reversed, and the cause remanded to the County Court of Lincoln County for further proceedings.”
The cause was accordingly remanded to the County Court of Lincoln County, when a motion was made by Stephen Touchstone, administrator, against L. J. Whit-tington and his securities as Special Commissioner, fot the amount of the note, and interest. An issue was made up on this motion, and upon proof and report of the Clerk and Master, the County Court rendered a judgment against Whittington and his securities for $955. From this judgment they have appealed to this Court.
Upon the trial of this cause in the County Court, two questions were mainly contested — first, whether the note was paid in Confederate Treasury notes; and, second, whether the Special Commissioner received the money of his own accord and upon his own responsibility, or at the request and upon the responsibility pf the complainant, Stephen Touchstone who was the administrator and who had a right to control the fund for payment of debts and for distribution.
*516 The first question is not now one material to be considered. The proof shows that tlie note was dated February 1st, 1862, and was payable February 1st, 1863, bearing interest from date. The note was paid and taken up a few days after it was executed. The Commissioner had no right to receive the money and deduct the interest, whether it was paid in Confederate money or bank notes, and he would be responsible for the loss in either view.[1]
But the Special Commissioner insists that he did not collect the note at all; that it was collected from Sugg, the payor thereof, by the administrator, through his attorney Stephens, and that it was deposited by said attorney with the Commissioner, to be drawn out and applied to the debts of the estate as they might be presented to the attorney for payment; and he states that a portion, of the deposit was so drawn out and applied by the attorney of the administrator, and with his approval, and that the residue not so drawn out is still in his hands.
The depositions of Sugg, the purchaser of the land, and Stephens, the attorney of the complainant, were taken. Sugg proves that on the day of sale, and after the sale, Whittington came to him and asked him how much money he could pay. Witness replied, that he had the money ready to make the first payment, and if he could collect it he could pay that much. Whittington went off) and in a very short time Stephens came to him, and said that witness could pay any amount, or all of it, if he wanted to do so. Stephens said he was representing the admin *517 istrator as bis attorney. Witness told him he had the money, or could get it, and would meet him in Fayette-ville any day, and pay the money. Witness met Stephens in Fayetteville, and agreed to pay off the first note, if he would deduct the interest at six per cent, for one year, and Stephens agreed to do- it, whereupon witness paid the money to Stephens, and he gave witness up his note. Witness was not satisfied what sort of money he paid, but that it was current money, and such as' they were willing to take.
Stephens proves that he was one of the attorneys who filed the bill for the sale of the land; that the administrator, (complainant, Stephen Touchstone, Jr.,) requested witness, when he left here, to act as his agent, and requested that if any money for the land was paid into court, to draw it out and apply it to the payment of the debts. Witness has no recollection of any conversation, about the time of the sale, about a cash payment; but he says that on the day of the sale Whittington came to him, and said Sugg wanted to pay the first payment on the land, if the interest could be deducted. Witness replied that he did not know whether the interest could be deducted or not; that the administrator had requested him to get the money and pay it out, and that the administrator had paid some out of his own pocket, and wanted to repay himself, as well as pay the debts. Witness soon afterwards met with Whittington and Sugg, when about the same conversation occurred. Witness proved, further, that he told Sugg and Whittington that he would apply to the County Court, for an order for *518 Whittington to receive the money minus the iuterest; that he made the application for the order, which was refused. Soon after, witness, Sugg and Whittington had a conversation, when the result was, Whittington agreed to receive the money minus the interest, witness having said to Whittington there would be no difficulty about it, as the debts were drawing interest, and witness told Whittington he would draw the money from him as it was needed to pay the debts. Witness said, further, Sugg wanted to pay the money, Whittington seemed anxious to receive it, and witness was anxious to get it and pay the debts. Witness has no recollection of Sugg paying the money to him. Witness received a letter from the administrator before the sale, requesting him to draw out any money that might be paid in, and pay the debts. Witness mentioned to Whittington that the administrator was anxious to get money to pay the debts.
The only material discrepancy between these two witnesses is as to the person to whom Sugg paid the money. Sugg says positively that he paid it to Stephens, and took up his note from. Stephens. On the contrary, Stephens says Sugg paid no money to him as agent of the administrator. If it were necessary to determine between these witnesses, as to the credit to which they are entitled, we should be inclined to hold that more credit is to be given to Sugg than to’ Stephens. Sugg’s evidence is affirmative and positive; besides, he is entirely disinterested, this Court having discharged him from his liability. Stephens denies receiving the money as agent of the administrator. This is not a full and positive de *519 nial of having received it at all. Besides, Stephens was directly interested in making Whittington liable, otherwise he might be held responsible himself.
But, without relying specially on this proof, it is apparent that the money was paid by Sugg, with the full concurrence of Stephens, the attorney of the administrator. It does appear from Stephens’ evidence that Whittington was anxious that the arrangement should be made for the payment of the money, but he also proves that he had informed Whittington that the administrator was anxious f<jr the payment of the money. This information may account for the interest taken by Whittington, in effecting the arrangement between Sugg and Stephens. But, beyond all this, the administrator files his petition on oath for judgment against Whittington, and in this he denies that he instructed Whittington to receive Confederate money, or that his instructions had reference to any specific kind of money. But he does not deny that he had given his attorney directions to receive payment for the land; his denial is confined to the question whether his instructions limited his attorney to the receipt of any specific kind of currency. From which, together with the proof of Stephens, it is clear that Whittington was fully authorized by the administrator to receive payment of the first note in advance of its maturity.
The only question remaining, is, whether Whittington was authorized to receive in payment Confederate money, or anything but gold and silver.[1] It is fully proved by Sugg and Stephens, that Whittington received such money *520 in payment of the first note as was satisfactory to Stephens, the agent and attorney of the administrator, and that he received it with the full approbation of Stephens, if, in fact, he did not receive it from Stephens himself. It is further proved, that a portion of the money was drawn from Whittington by Stephens, and used in paying the debts of the estate, and that the administrator acquiesced in and ratified the acts of his agent and attorney in so doing. There is no evidence that the administrator objected to, or was dissatisfied with the conduct of Whittington, in receiving the Confederate money or bank notes, until several years after the same was received. From all which, the Court is satisfied that the Clerk and Special Commissioner received the money on the first note for the land, in pursuance of the instructions of the administrator given to his agent and attorney, and that the act of the Clerk and Commissioner, in receiving the Confederate money or bank notes, was sanctioned and approved at the time by the agent and attorney of the administrator, and was afterwards acquiesced in and ratified by him.
The Court is, therefore, of opinion that no liability rests upon the Clerk and Special Commissioner and his securities for improperly receiving the payment of the first note of Sugg. But that Whittington is bound to hand over to the administrator of Touchstone, so much of said first payment as he had not properly disbursed, and as remains in kind in his hands; and if the same does not remain in kind in his hands, he is liable to account for its marketable value at the time when received. And as it does not clearly appear in what currency the *521 first note was paid, the same will be inquired into by the Clerk and Master, and reported upon, both as to the kind of currency received, and the marketable value at the time received. This inquiry and ■ report will not be made, if it is made to appear that "Whittington still has on hands the same currency received by him.
The decree below will be reversed, and modified as indicated, and the cause remanded, to be proceeded in as herein directed. The costs of this Court will be equally divided between- complainants and defendants; the costs of the Court below will be adjudged by the Chancellor.

 See Walker v. Walker, 4 Cold., 310 Acc.

 See Dillard v. Janet, Nashville, January 28, 1871; Matthews v. Thompson,' January 25, 1871.